UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


VICKI BALEZ

                                      CIVIL ACTION
VERSUS
                                      NUMBER 04-455-B-2
BELLSOUTH TELECOMMUNICATIONS,
INC.


**RULING**

**I.   Factual Background**

     This is the second time a federal district judge for the
Middle District of Louisiana has been required to review a suit
filed by the plaintiff, Vicki Balez.

     The plaintiff has been employed for over 30 years by BellSouth
Telecommunications, Inc. ("BellSouth") as a Network Administrative
Assistant.   In July of 2001, the plaintiff was diagnosed with
Sjögrens Syndrome,[1] a central nervous system condition whereby
immune cells attack and destroy the glands which produce tears and
saliva.

     Plaintiff took leave from her employment in September of 2001
to begin treatment for this disorder.   During this time, plaintiff
began receiving short term disability benefits from Broadspire

---

     [1]This disease is associated with rheumatic disorders, and
the symptoms include: dry mouth and eyes, chronic fatigue,
headache, lymph node swelling, and muscular and joint pain.

Doc#42382                        1

Services, Inc., ("Broadspire") formerly known as Kemper National Services.  Broadspire is an employee benefit welfare plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. 2001, *et seq.* ("ERISA").  In October of 2001, plaintiff's short term disability benefits were denied and discontinued.  The plaintiff alleges she returned to work on March 14, 2002, because her position was threatened if she did not return on that date.

The plaintiff administratively appealed Broadspire's decision to discontinue her disability benefits.  After her appeal was denied, plaintiff filed suit in the Middle District of Louisiana against Broadspire under ERISA seeking to recover the denied benefits.  In response to plaintiff's suit, Broadspire filed a motion for summary judgment which was referred to the magistrate judge for a report and recommendation.  In her report and recommendation Magistrate Judge Christine Noland recommended that Broadspire's motion for summary judgment be granted.  Judge John Parker adopted the report and recommendation of the magistrate judge, granted Broadspire's motion for summary judgment, and dismissed plaintiff's suit with prejudice.

While plaintiff's lawsuit against Broadspire was pending, she filed a charge with the Equal Employment Opportunity Commission ("EEOC") against her employer BellSouth, the defendant in the present lawsuit.  The EEOC rejected this charge on the ground that it was untimely filed.  While plaintiff's lawsuit against

Broadspire was pending, plaintiff also filed the present action in this Court against BellSouth, seeking to recover the short term disability benefits she had previously been denied.[2]  Plaintiff also included in her second federal suit claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and the Louisiana disability anti-discrimination statute, La. Rev. Stat. 23:323.

It is undisputed that the plaintiff receives no medical care or treatment for Sjögrens Syndrome at this time, but is being treated by a psychiatrist.

This matter is before the Court on the defendant's Motion for Summary Judgment.[3]  The plaintiff opposes defendant's motion.[4]  For the reasons which follow, defendant's motion for summary judgment is granted.

## II.  Law and Analysis

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[2]This claim is the same claim which Judge Parker dismissed with prejudice.

[3]Rec. Doc. No. 13.

[4]Rec. Doc. No. 19.

entitled to a judgment as a matter of law."[5]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[7]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[8]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which

---

[5] Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[8] *Little, supra* at 1075.

there is a genuine issue for trial.[9]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[10]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[11]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[13]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[9] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[10] *Little*, *supra* at 1075;  *Wallace*, *supra* at 1047.

[11] *Wallace*, *supra* at 1048 (quoting *Little*, *supra* at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[12] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

summary judgment."[14]

**B.   Collateral Estoppel of Claims for Disability Benefits**

The defendant argues that the doctrine of collateral estoppel should bar plaintiff's attempt to seek recovery of short term disability benefits because this claim has already been denied by both the administrative process and Judge Parker's dismissal of plaintiff's short term disability claim against Broadspire.   The Court agrees with defendant's argument.

The Fifth Circuit has approved the application of the collateral estoppel doctrine and set forth the following rule: "[T]o determine whether collateral estoppel applies, we consider whether[:] (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is [any] special circumstance that would make it unfair to apply the doctrine."[15]

However, the Fifth Circuit also set forth several other safeguards that " 'must be present before estoppel may be

---

[14] *Id.* at 248, 2510.

[15] *Baros v. Texas Mexican Railway Company*, 400 F.3d 228, 232-33 (5th Cir. 2005), *citing Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (*quoting Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995)).

employed.'"[16] First is a " 'requirement that the "facts and the legal standard used to assess them are the same in both proceedings."'"[17] Second, the court must inquire whether " 'a "new determination of the issue is warranted by the differences in the quality of extensiveness of the procedures followed in the two courts."'"[18] Finally, the court must "regard the availability of judicial review of the first proceeding as being 'of paramount importance to the issue of preclusion.'"[19]

It is clear this lawsuit is brought to recover the same short term disability benefits which were sought in plaintiff's previous lawsuit. It is equally clear that the issues and facts relied on in this case were previously litigated in the plaintiff's first lawsuit which Judge Parker dismissed. In addition, the issue in the first suit was not only "necessary to support the prior judgment," but was, in fact, the only basis for the prior judgment. The Court sees no special circumstances under the facts of these two cases which would make the application of collateral estoppel unfair in this case. Thus, the doctrine of collateral estoppel applies as a matter of law to plaintiff's claims for recovery of short term disability benefits which were previously fully

---

[16]*Id.*, at 233 (*quoting Winters*, 149 F.3d at 391).

[17]*Id.* (Citations omitted).

[18]*Id.* (Citations omitted).

[19]*Id.* (Citations omitted).

litigated and denied in plaintiff's first lawsuit in this district. Thus, defendant's motion for summary judgment on the short term disability benefits is granted.

**C.  Plaintiff's Claims under the Americans with Disabilities Act ("ADA")**

The Court now turns to a discussion of plaintiff's ADA claim.

**1.   Timely Filing of the EEOC Charge**

The defendant argues that the plaintiff failed to timely file her charge with the EEOC on her ADA claim, and therefore, her ADA claim should be dismissed.  In response to defendant's motion, plaintiff contends that her EEOC charge was timely filed considering the pendency of the administrative appeal of the denial of her short term disability benefits at the state level.  In the alternative, the plaintiff also argues that the doctrine of equitable tolling should be applied if her EEOC charge is found to have been untimely filed.

The plaintiff's arguments are without merit for several reasons.  Plaintiff's argument that the Record of Grievance filed by her union representative on August 9, 2002, was directed at Bellsouth on the same claims set forth in this lawsuit, totally contradicts and undermines plaintiff's assertion that the EEOC charge filed in January of 2004 was timely.  It is clear and undisputed from the plaintiff's own statement that she knew of the alleged discriminatory conduct on August 9, 2002, but failed to

file an EEOC charge within either 180 or 300 days of that date.

While plaintiff correctly notes that the filing of an EEOC charge is not a jurisdictional requirement and is subject to equitable tolling, plaintiff fails to present any evidence to support her argument that the doctrine of equitable tolling is applicable under the facts of this case.  The Fifth Circuit has made clear that, "'[i]f an EEOC charge is untimely filed, a suit based upon the untimely charge should be dismissed.'"[20] In the Fifth Circuit, "a complaining party in a Title VII case bears the burden of providing the justification for application of equitable tolling principles."[21]

In a case very similar to the facts of this case, the Fifth Circuit set forth the factors which must be established by the plaintiff before the principle of equitable tolling is applicable:

> In *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979), we discussed three possible bases for tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of

---

[20]*Wilson v. Secretary, Department of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) *(quoting Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476-77 (5th Cir. 1991); *Templeton v. Western Union Tel. Co.*, 607 F.2d 89, 91 (5th Cir. 1979)(per curiam); *see also National Ass'n of Gov't Employees v. City Pub. Serv.*, 40 F.3d 698, 711 (5th Cir. 1994)("[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies.")).

[21]*Id.* (*citing Nowlin v. RTC*, 33 F.3d 498, 503 (5th Cir. 1994); *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988, *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989).

the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights. *See id.*, at 1302-03.[22]

While the Fifth Circuit did note that the above three factors are not the only bases for tolling, the Court held that, "we 'have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.'"[23]

The Fifth Circuit's decision in *Wilson v. Zapata Off-Shore Company*[24] is also relevant to the present case. In *Wilson*, the court considered whether equitable tolling applied to plaintiff's claims. The court held as follows:

> Given the policies favoring limitation periods, federal courts have typically extended equitable relief only sparingly. *Irwin v. Veterans Administration*, 498 U.S. 89, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). For example, courts have been willing to apply equitable tolling in cases where the claimant has actively pursued judicial remedies by filing a timely but defective pleading,

---

[22]*Id.*, at 404.

[23]*Id.*, at 404-05, *quoting Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984)(per curiam)("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992)(requiring due diligence to warrant equitable tolling).

[24]939 F.2d 260 (5th Cir. 1991).

> *Burnett, supra.,;* or where the claimant has
> been induced or tricked by his adversary's
> misconduct into allowing the filing deadline
> to pass, *Glus v. Brooklyn Eastern District
> Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3
> L.Ed.2d 770 (1959). **Courts have been less
> willing, however, to apply equitable tolling
> in situations where the claimant's delay in
> seeking a judicial remedy resulted from his
> choice to pursue administrative relief first.**[25]

The *Wilson* court then discussed the United States Supreme Court's decision in *Johnson v. Railway Express Agency, Inc.*,[26] wherein the Supreme Court denied equitable tolling to a civil rights complainant who allowed the filing deadline under 42 U.S.C. § 1981 to lapse **while he pursued administrative proceedings** under Title VII before the Equal Employment Opportunity Commission. The *Wilson* court noted that, while the Supreme Court "observed that refusing to toll would have the effect of pressing civil rights complainants into premature and expensive litigation that could destroy opportunities for administrative conciliation, the Court nevertheless found 'no policy reason that excuses [plaintiff's] failure to take the minimal steps necessary to preserve each claim independently.'"[27]

The Fifth Circuit's decision in *Ramirez v. City of San*

---

[25]*Id.*, at 267. (Emphasis added).

[26]421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

[27]*Wilson v. Zapata Off-Shore Company*, 939 F.2d at 268, *quoting Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. at 1723.

*Antonio*[28] is particularly applicable to the facts of this case. The *Ramirez* case involved a city employee who sued the city and the employing board under the ADA for the employer's alleged failure to transfer him to a less physically demanding position within the company. The district court granted summary judgment against the plaintiff because plaintiff failed to file a charge of discrimination with the federal government within 300 days of the alleged discriminatory conduct. The district court further found that equitable tolling was not warranted under the facts of that case.[29]

The *Ramirez* Court noted that the ADA requires a plaintiff to file a charge of discrimination within 300 days of the alleged discriminatory act under 42 U.S.C. § 12117.[30] The court further stated that, "the limitations period on an employment discrimination claim 'begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred.'"[31] In explaining this rule, the court stated that the

---

[28]312 F.3d 178 (5th Cir. 2002).

[29]*Id.*, at 180.

[30]*Id.* (incorporating 42 U.S.C. § 2000e-5(e)).

[31]*Id.*, at 181, *quoting Vadie v. Mississippi State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992)(" 'The time begins when facts that would support a cause of action are or should be apparent.'")(*quoting Blumberg v. HCA Mgmt. Co., Inc.*, 848 F.2d 642, 645 (5th Cir. 1988)); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 259, 101 S.Ct. 498, 66 L.Ed.2d 431

limitations period "does not begin when the employer commits an act that this Court would characterize as an adverse employment decision," but rather "an employee's claim accrues at the moment the employee believes (or has reason to believe) that he is the victim of discrimination."[32]

The court then addressed the *Ramirez* plaintiff's assertion that equitable tolling should be applied because the EEOC allegedly informed him that he would not have a claim until his employer reduced his salary.  The court noted that the United States Supreme Court has "made clear, however, that these equitable doctrines 'are to be applied sparingly.'"[33] Finding no evidence that either the plaintiff's employer or the EEOC's conduct reasonably induced the plaintiff not to file his lawsuit within the limitations period, the court affirmed summary judgment in favor of the defendant.[34]

In the present case, it is undisputed that the plaintiff clearly knew of the alleged discriminatory conduct on the part of the defendant as early as August 9, 2002.  The record is also void of any evidence that plaintiff's employer or any administrative

---

(1980)(holding, in a challenge to a denial of tenure, that the limitations period "commenced ... when the tenure decision was made and [the professor] was notified.").

[32]*Id.*, at 182.

[33]*Id.*, at 183, *quoting Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002).

[34]*Id.*, at 184.

agency reasonably induced the plaintiff not to file her lawsuit within the limitations period.  The facts of this case indicate that plaintiff should have filed her charge sometime in June of 2003 in order for the suit to have been timely filed.  Since plaintiff waited until January of 2004 to file her charge, her claim was not timely filed and the doctrine of equitable tolling does not apply under the facts of this case.

Furthermore, not only has the plaintiff failed to satisfy any of the three bases discussed above for equitable tolling to apply, plaintiff's proposed factual basis for equitable tolling on the ground that she was pursuing administrative remedies at the state level, has been expressly rejected by the courts as a matter of law under similar facts.

Thus, defendant's motion for summary judgment on plaintiff's claim under the ADA is granted.

### 2.   Prima Facie case for discrimination under the ADA

Although the Court has found as a matter of law under the facts of this case that the plaintiff failed to timely file a discrimination charge with the EEOC, the Court will, in the alternative and in the interest of justice and judicial economy, also address whether the plaintiff has set forth a *prima facie* case under the ADA.

The ADA was enacted to protect qualified individuals with disabilities from discrimination in the workplace.  A qualified

individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[35]

Under the ADA, a "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[36] A disability under the Act is defined as either (1) a physical or mental impairment that **substantially limits** one or more of the **major life activities** of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment.[37]

A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.[38]  To rise to the level of a disability, an impairment "must *substantially* limit one or more major life activities."[39]  The statutory language, requiring a substantial limitation of a major life activity, emphasizes that

---

[35] 42 U.S.C. § 12111(8); *See Giles v. General Electric Co.*, 245 F.3d 474, 483 (5th Cir. 2001); *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

[36] 42 U.S.C. § 12111(8).

[37] 29 C.F.R. § 1630.2(g). (Emphasis added).

[38]*Deas v. River West, L.P.*, 152 F.3d 471, 479, *quoting Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995).

[39]*Id.* (Emphasis in original).

the impairment must be a significant one.[40]

The term "substantially limits" has been defined in the EEOC regulations as being either " '[u]nable to perform a major life activity that the average person ... can perform' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.' "[41] The EEOC definition of "major life activities" includes functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, working, lifting, reaching, sitting or standing."[42]

A plaintiff may prove a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the plaintiff may establish a prima facie case of discrimination by showing that the plaintiff: (1) suffers from a disability; (2) is

---

[40]*Forrisi v. Bowen*, 794 F.2d 931, 933-34 (4th Cir. 1986); *see also, Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

[41]*Deas,* 152 F.3d at 480, *quoting* 29 C.F.R. § 1630.2(j)(1)(I) & (ii).

[42]*Breech v. Becon Construction*, 2002 WL 31324045, at *4 (E.D. La. Oct. 16, 2002)(*citing Ortega v. Southwest Airlines*, 1999 WL 1072543, at *3 (E.D. La. Nov. 24, 1999)(Clement, J.)(*citing Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998); 29 C.F.R. § 1630.2(I), Appendix to Part 1630 – Interpretive Guidance on Title I of the ADA; 29 C.F.R. § 1630.2(j)(I) – (iii))).

otherwise qualified for the job; (3) was subject to some adverse employment action; and (4) was replaced or treated less favorably than non-disabled employees.[43]

The defendant contends that the plaintiff cannot satisfy the first prong of the *prima facie* case, i.e., that she is "disabled" as defined by the Act. In order to establish the first prong of the *prima facie* case of disability discrimination, the plaintiff must establish that she is a "qualified person with a disability" under the Act.

The Fifth Circuit has held that "an individualized, case-by-case determination of disability best achieves the purposes of the ADA."[44]   Furthermore, the EEOC has set forth in its Interpretive Guidance that "'[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.'"[45] Thus, the Court must determine if the plaintiff suffers from a "disability" based on the circumstances surrounding plaintiff's Sjögrens Syndrome and other related medical conditions.

---

[43]   *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir. 1995); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, (5th Cir. 1996), *cert. denied*, 519 U.S. 1029, 117 S. Ct. 586, 136 L.Ed.2d 515 (1996).

[44]*Deas*, 152 F.3d at 478.

[45]*Id.*, *quoting* 29 C.F.R. § 1630.2(j), App. (1997).

A review of the record reveals that plaintiff's deposition testimony establishes that she is not "disabled" under the ADA. The plaintiff testified that she no longer receives any treatment or care for her Sjögrens Syndrome other than periodic monitoring, and that she takes no medication for this disorder.[46]  Although the plaintiff's activities were limited when she was initially treated for Sjögrens Syndrome, these limitations were temporary. Furthermore, the only activities in which the plaintiff testified she is impaired involve housecleaning and playing with her grandchildren.[47]   The district court for the Eastern District of Louisiana addressed similar issues in *Bear v. Exxon Mobil Corporation*.[48]  In *Bear*, the plaintiff brought suit against his employer for alleged violation of the ADA after plaintiff sustained injuries related to his work.  Plaintiff sought to be allowed to return to work in a light duty position.  The employer moved for summary judgment, arguing that the plaintiff was not "disabled" as defined by the ADA.  The district court granted defendant's motion for summary judgment.

The *Bear* case is significant to the case at bar because the plaintiff in *Bear* claimed that his condition made him unable to engage in recreational sports, curtailed his church attendance,

---

[46]*See*, Plaintiff's Deposition, pp. 40-42.

[47]*Id.*, at pp. 38-39.

[48]2004 WL 2603727 (E.D. La. Nov. 15, 2004).

eliminated his household chores such as washing her car and bathtub, all yard work, and general household maintenance.[49] With regard to household chores, the court stated: "The Court agrees that performing basic household chores, *i.e.* those that are necessary to maintain a sanitary environment, is an activity that is of central importance to most people's daily lives and, thus, constitutes a major life activity under the ADA."[50]

However, the Court rejected plaintiff's assertion that activities like washing the car, gardening, golfing, going shopping at the mall, and other similar activities were "major life activities" for purposes of the ADA.[51] The court further explained that, even if these tasks should be considered as "major life activities," "the Court additionally concludes that the inability to do only those *particular* tasks does not constitute a 'substantial limitation' of a major life activity. Finally, though cleaning the bathtub reasonably can be considered a basic household chore, the Court likewise does not find that the inability to complete that single task is a substantial limitation on that major

---

[49]*Id.*, at * 4.

[50]*Id.* (*See, e.g.*, *Toyota Motor Mfg., Kentucky, Inc.*, 534 U.S. at 202, 122 S.Ct. at 693 ("household chores ... are among the types of manual tasks of central importance to people's daily lives"); *Marinelli v. City of Erie, Pennsylvania*, 216 F.3d 354, 362-63 (3d Cir. 2000)(cleaning is a major life activity to the extent necessary to live in a healthy or sanitary environment).

[51]*Id.*

life activity."[52]

In the present case, the Court agrees with the Fifth Circuit that basic household chores can constitute a major life activity under the Act.  However, plaintiff's own deposition testimony[53] makes it clear that plaintiff is not "substantially limited" in this activity.  The plaintiff testified that she is not limited every day or even every week in performing her household duties, and at times, she can do her housework without a problem.  The fact that plaintiff is too tired at times to perform her housework, and at other times is able to perform these tasks, is insufficient to establish a "substantial limitation" that would qualify plaintiff as disabled under the Act.  Thus, for this additional reason, defendant's motion for summary judgment on the ADA claim is granted.

> D.  **Plaintiff's Claim under the Family & Medical Leave Act ("FMLA")**

Plaintiff also filed a claim under the Family Medical Leave Act ("FMLA").  Plaintiff's FMLA claim appears to be a claim for the same disability benefits plaintiff sought in her first lawsuit and even in this second suit.  If the Court believes counsel, plaintiff would be collaterally estopped from re-litigating what is essentially the same claim filed under a different theory of

---

[52]*Id.*, at *5. (Emphasis in original).

[53]*See*, Plaintiff's Deposition, p 39, lines 16-21.

recovery.   However, out of an abundance of caution and in the interest of judicial economy, the Court will address plaintiff's retaliation claim under the FMLA as a distinct and separate claim.

The plaintiff alleges that the defendant retaliated against her because she took protected FMLA leave.  To make a *prima facie* showing of retaliation under the FMLA, a plaintiff must show that she: (1) was protected under the FMLA; (2) suffered an adverse employment decision; and either (3a) she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave.[54]

The plaintiff has failed to make out a *prima facie* case of retaliation under the FMLA under the facts of this case.  Plaintiff has failed to show that her medical leave was covered under the FMLA.  Furthermore, the FMLA entitles an "eligible employee" to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons.[55]  By her own admission, plaintiff took leave in September of 2001 and did not return to work until March of 2002, clearly a longer time period than the twelve weeks allowed under the FMLA.  Although plaintiff took far more than the statutorily allowed twelve weeks of leave under the FMLA, she was allowed to keep her job when she returned to work.

---

[54]*Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757 (5th Cir. 2001), *citing Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999).

[55]*Rutland v. Pepper*, 404 F.3d 921 (5th Cir. 2005)

The plaintiff has also failed to present any evidence to establish that she had a "qualifying medical or family reason" as defined by the Act.

Thus, even if the Court gives the plaintiff the benefit of the doubt that this alleged retaliation claim is different from her claim seeking recovery of disability benefits which were denied in her previous lawsuit, plaintiff fails to make out a *prima facie* case of retaliation under the FMLA under the facts of this case. Thus, the defendant is entitled to summary judgment as a matter of law on the FMLA claim.

### E.   ERISA and Plaintiff's claims under Louisiana law

The plaintiff concedes that, to the extent that her state law claims involve an employee benefit welfare plan governed by ERISA, these claims are preempted by ERISA.   The plaintiff has also alleged claims under the Louisiana disability anti-discrimination statute.[56]   The Court in the exercise of its discretion declines to consider the plaintiff's state disability discrimination claims pursuant to 28 U.S.C. § 1367.   Therefore, the claim brought under the Louisiana disability anti-discrimination statute is dismissed without prejudice.   The other state law claims are dismissed with prejudice.

### III. Conclusion

For the reasons set forth above, the Court finds that the

---

[56]La. R.S. 23:323.

plaintiff is collaterally estopped from seeking recovery of short term disability benefits in this lawsuit.  The Court further finds that the plaintiff has failed to timely file an EEOC charge regarding her ADA claim.  Plaintiff has also failed to establish a *prima facie* case under the ADA because plaintiff is not "substantially limited" in one of life's major activities. Plaintiff also failed to establish a *prima facie* case of retaliation under the FMLA.  The plaintiff's state law claims regarding the denial of her short-term disability benefits are preempted by ERISA.  Finally, the Court declines to exercise jurisdiction over plaintiff's remaining claims under the Louisiana disability anti-discrimination law, and these claims are dismissed without prejudice.

Therefore:

IT IS ORDERED that defendant's motion for summary judgment shall be granted on all of plaintiff's claims except plaintiff's claim under the Louisiana disability anti-discrimination statute. This claim shall be dismissed without prejudice.  All other claims shall be dismissed with prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, August 19, 2005.

**FRANK J. POLOZOLA, CHIEF JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**